UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL J. BENNETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cv-00523-JPH-KMB ) |
| DENNIS REAGLE, et al., | ) ) |
| Defendants. | ) |

**ORDER ON MOTION TO DISMISS**

Michael J. Bennett died after being exposed to water contaminated by legionella while he was an inmate at Pendleton Correctional Facility ("PCF"). His estate has filed this case alleging that Defendants are responsible for Mr. Bennett's death. *See* dkt. 64. Defendant Aqua Indiana, which managed the water system that furnished water to PCF, has filed a motion to dismiss the claims against it. Dkt. [84]. For the reasons below, the motion is **GRANTED**.

**I.
Facts and Background**

Because Defendant has moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

In November 2021, while Mr. Bennett was an inmate at PCF, he became seriously ill with symptoms including a deep cough, fever, profuse sweating, delirium, fatigue, and lack of muscle control. Dkt. 64 at 5. He was eventually taken to the hospital, where he died on December 3, 2021 "resulting from exposure to lethal legionella bacteria." *Id.* at 6.

1

Around that time, the water at PCF was contaminated with bacteria including legionella. *Id.* at 7. Aqua Indiana, a private company, managed the water system that provided water to PCF under a contract with the nearby Town of Ingalls. *Id.* at 4. Mr. Bennett's estate alleges that "[u]pon information and belief, Defendants Town of Ingalls[1] and Aqua Indiana failed to provide safe potable water to PCF." *Id.* at 7.

Mr. Bennett's estate brought this action in March 2023. Dkt. 1. The amended complaint raises Eighth Amendment and Indiana-law negligence claims against several defendants, including Indiana Department of Correction officials, medical providers at PCF, and Aqua Indiana. Dkt. 64. Aqua Indiana has filed a motion to dismiss the claims against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. [84].

## II.
## Rule 12(b)(6) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint "must

---

[1] The Town of Ingalls has been voluntarily dismissed from this case. Dkt. 118; dkt. 120.

2

allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616.  "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

Indiana substantive law governs the estate's negligence claim.  *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).  Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 319 (7th Cir. 2021).  In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

## III. Analysis

### A. Eighth Amendment claim

Mr. Bennett's estate alleged an Eighth Amendment cruel and unusual punishment claim under 42 U.S.C. § 1983 against Aqua Indiana.  Dkt. 64 at 10–11.  In response to Aqua Indiana's motion to dismiss, however, the estate

3

concedes that under current law, the § 1983 claim against Aqua Indiana must be dismissed. Dkt. 100 at 5 n.1. This claim is therefore dismissed under that concession.

### B. Indiana-law negligence claim

Aqua Indiana argues that the estate has not plausibly pleaded a negligence claim against it because the estate has not alleged facts supporting a duty that Aqua Indiana owed Mr. Bennett. Dkt. 85 at 10–11. The estate responds that Aqua Indiana had a duty "to provide safe potable water to PCF." Dkt. 100 at 7–9. The estate focuses on allegations that Aqua Indiana failed to test the water it supplied to PCF. *Id.*

The parties therefore appear to agree that Aqua Indiana had no duty to maintain PCF's plumbing or otherwise take any action within the facility. *See* dkt. 85 at 10–11; dkt. 100 at 7–9. To the extent that the estate argues otherwise, it cannot succeed because Aqua Indiana did not owe a duty within PCF under Indiana law, and the estate does not argue that a new duty should be recognized. *See KMC, LLC v. E. Heights Utils., Inc.,* 144 N.E.3d 773, 776 (Ind. Ct. App. 2020) ("[T]here is no duty on the part of a public utility . . . to inspect the devices, apparatus, or fixtures of a responsible patron on the patron's property, located at a point beyond the meter, which is the point of delivery of the utility."); *cf. Putnam Cnty. Sheriff v. Price*, 954 N.E.2d 451, 454–56 (Ind. 2011) (holding that the government's duty to exercise reasonable care to keep streets safe does not apply "[a]bsent ownership, maintenance, or control of the county roadway"). Aqua Indiana therefore did not breach a duty

4

by allegedly "failing to appropriately and effectively respond to the legionella outbreak" within PCF.  *See* dkt. 64 at 13.

As for any duty before the water was delivered to PCF, the estate alleges that Aqua Indiana owed Mr. Bennett a "duty of care" that it breached in four ways.  Dkt. 100 at 5.

The first three of those alleged breaches relate to failing to mitigate, protect, and warn inmates of a "known water contamination," "namely legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health."  *Id.*  But the only alleged "known" hazard occurred within PCF.  *See* dkt. 64 at 8-9 (allegations about IDOC Defendants' knowledge of contaminated water within PCF).  While the estate alleges—with no factual heft—that Aqua Indiana "failed to provide safe potable water to PCF," it does not allege that the bacterial contamination existed before the water was delivered to PCF or that any such contamination was "known" before the water left Aqua Indiana's control.  Dkt. 64 at 7.  As explained above, Aqua Indiana had no duty to mitigate, protect, or warn inmates of water contamination that developed after the water entered PCF.  *KMC*, 144 N.E.3d at 776 (holding that public utility has no duty to inspect plumbing beyond the meter "which is the point of delivery of the utility"); *Price*, 954 N.E.2d at 454–56.

Finally, the complaint alleges that Aqua Indiana generally "fail[ed] to provide preventative methods to reduce the risk of foreseeable harm."  Dkt. 64 at 13.  But the estate cites no legal support for a duty that required Aqua Indiana to provide preventative measures.  *See* dkt. 100 at 5-8.  The duty is

5

instead "to supply enough water of good quality" to the facility. *KMC*, 144 N.E.3d at 776. Yet the estate has not alleged that the bacterial contamination at issue was in the water before it entered PCF—much less that Aqua Indiana knew or should have known of any such contamination. *See* dkt. 64 at 13. The allegations against Aqua Indiana are therefore too vague and conclusory to meet the burden of "provid[ing] some specific facts" to support a negligence claim. *McCauley*, 671 F.3d at 616; *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) ("Threadbare recitals of a cause of action, supported by mere conclusory allegations, do not suffice."). The estate has failed to allege "enough details about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616. The negligence claim against Aqua Indiana therefore must be dismissed.

## IV.
## Conclusion

Defendant Aqua of Indiana's motion to dismiss is **GRANTED**. Dkt. [84]. All claims against it are **dismissed with prejudice. The clerk is directed** to terminate Aqua Indiana as a defendant on the docket.[2]

**SO ORDERED.**

Date: 9/26/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[2] The estate mentions in a footnote that it "reserves all rights to amend [its] pleadings." Dkt. 100 at 5 n.1. In order to amend the complaint, the estate would have to show good cause for extending the deadline for motions for leave to amend the pleadings under Federal Rule of Civil Procedure 16(b)(4) and that "justice . . . requires" leave to amend under Federal Rule of Civil Procedure 15(a)(2).

Distribution:

All electronically registered counsel